4:14-cv-04015-SLD-JEH   # 26   Page 1 of 13

E-FILED

10209-U0814
JLB/kmp

Wednesday, 06 August, 2014  11:14:57 AM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| JEREMY NOEL EPPERSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Law No.: 4:14 CV 04015 |
| ) | |
| DR. ADEYEMI FATOKI, NURSE CARRIE LALVIN, ) | Judge Sara Darrow |
| JAIL ADMINISTRATOR JOE OLSON; ) | Magistrate Judge Jonathan E. Hawley |
| ) | |
| Defendants. ) | |

## MOTION FOR SUMMARY JUDGMENT

NOW COME Defendants, ADEYEMI FATOKI, M.D., and CARRIE MELVIN, L.P.N., by HEYL, ROYSTER, VOELKER & ALLEN, and for their Motion for Summary Judgment, filed pursuant to Federal Rule of Civil Procedure 56 and Local Rule 7.1, as follows:

### *Introduction*

This suit was filed by Mercer County Jail inmate Jeremy Epperson who claims that Carrie Melvin, L.P.N., and Adeyemi Fatoki, M.D., were deliberately indifferent to his chronic infection of his gums and teeth. Although Plaintiff seeks relief under 42 U.S.C. § 1983, his Complaint should be construed as asserting a claim under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), because he was awaiting trial on federal criminal charges during the time period in question and § 1983 provides a right of action to remedy unconstitutional state, not federal, conduct.

To that end, summary judgment should be entered in favor of Dr. Fatoki and Nurse Melvin as a matter of law pursuant to the United States Supreme Court's recent ruling in *Minneci v. Pollard*, 132 S.Ct. 617 (2012), which bars a federal inmate's ability to file a constitutionally-

1

10209-U0814
JLB/kmp

based *Bivens* medical deliberate indifference action against privately employed medical treatment providers, such as Dr. Fatoki and Nurse Melvin.

Alternatively, even if this Court reviews Plaintiff's claim as one brought pursuant to Section 1983, summary judgment should nonetheless be granted in favor of Dr. Fatoki and Nurse Melvin a matter of law because Plaintiff was provided with all medically necessary care, i.e., he was, *inter alia*, referred out for oral surgery twice, was provided with antibiotics and pain medication -which belies any claim of deliberate indifference. They are additionally entitled to qualified immunity.

### *Undisputed Material Facts*

1. At all times pertinent to the above-captioned matter, Correctional Healthcare Companies, Inc., ("CHC") (formerly Health Professionals, Ltd.) was a private correctional healthcare company that was under contract to provide medical care at certain jails, including the Mercer County Jail, which housed inmates awaiting trial on federal criminal charges, such as Plaintiff, pursuant to an agreement that the jail had with the federal government. *See* Declaration of Adeyemi Fatoki, M.D., attached hereto as Exhibit A, para. 2; Declaration of Carrie Melvin, L.P.N., attached hereto as Exhibit B, para. 2; Mercer County Jail-United States Marshals Service Contract, attached hereto as Exhibit C.

2. Plaintiff Jeremy Epperson was incarcerated at the Mercer County Jail during the time period at issue awaiting trial of the federal conspiracy to manufacture methamphetamine charge asserted against him in Case No. 13-CR-10024, filed in the United States District Court for the Central District of Illinois, which defense counsel asks the Court to take judicial notice of pursuant to Federal Rule of Evidence 201. *See* Exhibit A, para. 3; Exhibit B, para. 3.

10209-U0814
JLB/kmp

3. During the time period in question, Carrie Melvin, L.P.N., and Adeyemi Fatoki, M.D., were employed by CHC to provide care to Mercer County Jail inmates. Neither Nurse Melvin nor Dr. Fatoki was employed by Mercer County, the Mercer County Jail or any other government or municipal entity. *See* Exhibit A, para. 4; Exhibit B, para. 4.

4. CHC's contract with the jail provided that CHC was to provide dental screenings for inmates, but dental care, including tooth extractions, was to be provided by off-site treatment providers and paid for by the jail (or the federal government in Plaintiff's case) when medically necessary, i.e., where there was an infection. *See* Exhibit A, paras. 5, 25; Exhibit B, paras. 5, 25; Exhibit C.

5. Medical, dental and correctional records concerning Plaintiff from the Mercer County Jail and River Valley Oral and Maxillofacial Surgery, Ltd. ("River Valley") are attached hereto as Exhibits A1 and A2. *See also* Exhibit A, paras. 6-7; Exhibit B, paras. 6-7.

6. When Plaintiff was taken into custody at the jail, his teeth were permanently destroyed because of his use of methamphetamines but he did not have an infection. *See* Exhibit A, para. 8; Exhibit B, para. 8.

7. When Plaintiff reported tooth pain and swelling on or about 4/5/13, he was treated with antibiotics, Ibuprofen and Tylenol. *See* Exhibit A, para. 9; Exhibit B, para. 9.

8. When Nurse Melvin and Dr. Fatoki saw Plaintiff on 4/8/13, there was improvement with respect to the swelling and pain, i.e., Plaintiff's condition was responding to treatment, so Dr. Fatoki ordered Plaintiff to complete the round of antibiotics before determining whether a referral to an external provider was warranted. *See* Exhibit A, para. 10; Exhibit B, para. 10.

10209-U0814
JLB/kmp

9. Nurse Melvin and Dr. Fatoki next saw Plaintiff on 5/20/13 for a rash on his feet. He did not complain about his dental condition. *See* Exhibit A, para. 11; Exhibit B, para. 11.

10. When Plaintiff next complained about swelling and pain on 6/3/13, he was given another round of antibiotics and pain medication, and received education on dental hygiene. *See* Exhibit A, para. 12; Exhibit B, para. 12.

11. When Dr. Fatoki saw Plaintiff on 7/1/13, there was no evidence of acute infection or inflammation. Again, Plaintiff's condition responded to the antibiotics. *See* Exhibit A, para. 13; Exhibit B, para. 13.

12. Nurse Melvin saw Plaintiff on 8/16/13 for complaints of swelling and left ear pain. Nurse Melvin discovered wax build up in Plaintiff's ears so she dewaxed them. Plaintiff was given Ibuprofen and a warm, moist cloth to apply to his left side. Plaintiff was scheduled to see Dr. Fatoki on 8/19/13. *See* Exhibit A, para. 14; Exhibit B, para. 14.

13. When Dr. Fatoki saw Plaintiff on 8/19/13, there was an apparent tooth infection so Dr. Fatoki referred Plaintiff to River Valley in addition to prescribing antibiotics and Ibuprofen. *See* Exhibit A, para. 15; Exhibit B, para. 15.

14. Plaintiff underwent an extraction at River Valley on 8/29/13. *See* Exhibit A, para. 16; Exhibit B, para. 16.

15. Plaintiff was seen by Nurse Melvin on 10/4/13 for tooth pain and sinus swelling. On exam, Plaintiff did not have a fever. Plaintiff was given pain medication. He was to return to the clinic if his condition worsened and keep his mouth rinsed. *See* Exhibit A, para. 17; Exhibit B, para. 17.

16. Plaintiff refused to be seen by medical staff on 10/14/13. *See* Exhibit A, para. 18; Exhibit B, para. 18.

10209-U0814
JLB/kmp

17.    Plaintiff was seen by Nurse Melvin on 10/22/13 for pain and swelling on the right upper side of his mouth. Plaintiff was given Ibuprofen and Tylenol, and Orabase was applied to the area. *See* Exhibit A, para. 19; Exhibit B, para. 19.

18.    There was no evidence of acute inflammation or infection when Plaintiff was seen by Dr. Fatoki on 10/28/13. The plan was to continue Ibuprofen and dental antibiotics; there was no indication for extraction at that time. *See* Exhibit A, para. 20; Exhibit B, para. 20.

19.    Plaintiff was seen by Nurse Melvin on 12/30/14 for a tooth abscess on the right side with swelling. He was given antibiotics for seven days and was instructed to keep his mouth clean and rinsed. *See* Exhibit A, para. 21; Exhibit B, para. 21.

20.    Dr. Fatoki referred Plaintiff back to River Valley when his condition did not respond to antibiotics. *See* Exhibit A, para. 22; Exhibit B, para. 22.

21.    Plaintiff was seen at River Valley on 2/6/14 for an extraction. *See* Exhibit A, para. 23; Exhibit B, para. 23.

22.    The medical staff at Mercer County Jail has no control over when an inmate is seen by the outside dentist or oral security inasmuch as arrangements must be made for security and must coincide with River Valley's schedule. *See* Exhibit A, para. 24; Exhibit B, para. 24.

23.    Nurse Melvin submitted on Plaintiff's behalf an "Urgent" Prisoner Medical Requests to the US Marshalls Service for the Central District of Illinois on 8/20/13, 1/13/14 and 1/21/14 for the above-referenced dental treatment at River Valley. Her requests were approved by the USMS District Office on 8/24/13 and 1/24/14. *See* Exhibit A, para. 25; Exhibit B, para. 25.

24. Neither Dr. Fatoki nor Nurse Melvin are aware of any complaints made by Plaintiff concerning his dental condition since he was treated on 2/6/14. *See* Exhibit A, para. 26; Exhibit B, para. 26.

25. It is the opinion of Dr. Fatoki and Nurse Melvin, based upon their review of Plaintiff's records and their education, training and experience, to a reasonable degree of medical and nursing certainty, that Plaintiff was timely provided with any and all medically necessary treatment. *See* Exhibit A, para. 27(a); Exhibit B, para. 27(a) and (b).

26. It is Dr. Fatoki's opinion, based upon his review of Plaintiff's records and his medical education, training and experience, to a reasonable degree of medical certainty, that Plaintiff's teeth were permanently destroyed by his use of methamphetamines upon intake at the jail and that there is no objective evidence of any permanent damage or substantial harm as a result of the alleged misconduct attributable to him in this case. *See* Exhibit A, para. 27(b).

27. It is the opinion of Dr. Fatoki and Nurse Melvin, based upon their review of Plaintiff's records and their education, training and experience, to a reasonable degree of medical and nursing certainty, that while Plaintiff was under their care, he was administered ample and appropriate medication and treatment for any complaints of pain, swelling and otherwise, he might have had. Controlled substances were and are contraindicated for Plaintiff, particularly in light of his history of severe abuse of methamphetamines. *See* Exhibit A, para. 27(c); Exhibit B, para. 27(c).

28. It is Dr. Fatoki's opinion, based upon his review of Plaintiff's records and his medical education, training and experience, to a reasonable degree of medical certainty, that at no time did Nurse Melvin or Dr. Fatoki refuse Plaintiff any medically necessary care or treatment;

10209-U0814
JLB/kmp

to the contrary, Nurse Melvin and Dr. Fatoki met the applicable standard of care regarding their treatment of Plaintiff, as outlined above. *See* Exhibit A, para. 27(d).

29.   At no time was Dr. Fatoki or Nurse Melvin aware that a substantial risk of serious harm existed with respect to Plaintiff's condition, nor do they believe Plaintiff was at such a risk. *See* Exhibit A, para. 27(e); Exhibit B, para. 27(d).

### *Standard of Review*

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, a court may grant summary judgment if the information before the court shows that there are no material issues of fact in dispute and that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). If the factual context renders the claims asserted by the party opposing summary judgment implausible, the party must come forward with more persuasive evidence to support his claim than would otherwise be necessary. *McDonnell v. Cournia*, 990 F.2d 963, 967 (7th Cir. 1993).

Summary judgment is the "put up or shut up" moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events. *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2000). Only disputes over facts that might affect the outcome of the suit will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248. A party opposing summary judgment bears the burden to respond, not simply by resting on its own pleading but by "set[ting] out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

10209-U0814
JLB/kmp

It has repeatedly been recognized that "the validity of medical records and entries in the medical records cannot be disputed in the absence of any contrary evidence." *See*, *e.g., Moss v. Morman*, No. 99 C 3571, 2001 WL 1491183, at *4 (N.D.Ill. Nov.26, 2001) (Exhibit D); *Myers v. McAuley*, No. 02 C 1590, 2003 WL 22232830, at *2 (N.D.Ill. Sept. 16, 2003) (Exhibit D). In addition, an inmate's bald allegations, without more, are insufficient to overcome a motion for summary judgment. *Moss*, 2001 WL 1491183, at *4; *Bank Leumi Le-Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir. 1991). Similarly, a mere scintilla of evidence in support of the plaintiff's position is not sufficient to create a genuine issue of material facts. *Anderson*, 477 U.S. at 252.

***Argument***

<u>A Federal Inmate is Barred From Filing a Constitutionally-Based Claim
Against Private Medical Providers</u>

By way of brief background, CHC was a private correctional healthcare company that was under contract to provide medical care at certain jails, including the Mercer County Jail, which housed inmates awaiting trial on federal criminal charges, such as Plaintiff, pursuant to an agreement that the jail had with the federal government. *See supra* Statement of Fact ("SOF"), 1-2. Nurse Melvin and Dr. Fatoki were privately employed by CHC to provide care to Mercer County Jail inmates. SOF, 3.

Although Plaintiff seeks relief under 42 U.S.C. § 1983, his Complaint should be construed as asserting a claim under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), because he was awaiting trial on federal criminal charges during the time period in question and § 1983 provides a right of action to remedy unconstitutional state, not federal, conduct. *See, e.g., Alba v. Montford*, 517 F.3d 1249, 1254 (11th Cir. 2008); *Stephen Patrick vs. Dr. Kim*, Case No. 11 C 9031 (Frederick J. Kapala, N.D. Ill. Jan. 10, 2013) (Exhibit D). To that

8

10209-U0814
JLB/kmp

end, summary judgment should be entered in favor of Dr. Fatoki and Nurse Melvin as a matter of law pursuant to the United States Supreme Court's ruling in *Minneci v. Pollard*, 132 S.Ct. 617 (2012), which bars a federal inmate's ability to file a constitutionally-based *Bivens* medical deliberate indifference action against privately employed medical treatment providers.

No Deliberate Indifference to a Serious Medical Need

Alternatively, even if this Court reviews Plaintiff's claim as one brought pursuant to Section 1983, summary judgment should nonetheless be granted in favor of Dr. Fatoki and Nurse Melvin because there is no evidence that they acted with deliberate indifference. Plaintiff has the burden of showing that: (1) the harm to him was objectively serious; and, (2) Dr. Fatoki and Nurse Melvin were aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and they drew that inference. *See, e.g.*, *Wilson v. Seiter*, 501 U.S. 294, 297 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Zentmyer v. Kendall County*, 220 F.3d 805, 810 (7th Cir.2000); *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)); *Williams v. O'Leary*, 55 F.3d 320, 324 (7th Cir. 1995) (repeated acts of medical malpractice are not sufficient).

Plaintiff is unable to satisfy this burden here. Specifically, when Plaintiff was taken into custody at the jail, his teeth were permanently destroyed because of his use of methamphetamines, but he did not have an infection. SOF, para. 6. When Plaintiff did report tooth pain and swelling, he was consistently treated with antibiotics, Ibuprofen, Tylenol and Orabase, and received education on dental hygiene. Plaintiff's condition improved with this treatment. SOF, paras. 7, 8, 10-19. Plaintiff was referred out to River Valley for tooth extractions twice when Dr. Fatoki deemed it medically necessary. SOF, paras. 13-14, 20-21. In the Seventh Circuit, that an inmate was treated defeats a claim of deliberate indifference. *See, e.g., Wells v. Franzen*, 777 F.2d 1258, 1264 (7th Cir. 1985); *Garvin v. Armstrong*, 236 F.3d 896 (7th Cir. 2001)

(affirming summary judgment in favor of jail doctor; in reaching that decision, the court found it significant that the doctor's actions would contradict a finding of deliberate indifference, such as moving the inmate to the medical unit so he could retrieve his inhaler more quickly).

Plaintiff was provided with any and all medically necessary treatment, including referrals to specialists, examinations, pain medication and antibiotics. SOF, paras. 25, 27-28. Neither Dr. Fatoki nor Nurse Melvin are aware of any complaints made by Plaintiff concerning his dental condition since he was last treated at River Valley on 2/6/14. SOF, para. 24. At no time was Dr. Fatoki or Nurse Melvin aware that a substantial risk of serious harm existed with respect to Plaintiff's condition, nor do they believe Plaintiff was at such a risk. SOF, para. 29.

Further, there is no objective evidence of any permanent damage or substantial harm as a result of the alleged conduct in this case. SOF, para. 26. *See Langston v. Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996) (stating that "[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed").

Even if this Court were to assume the truth of the allegations being asserted by Plaintiff, such, at best, would amount to medical negligence –not a constitutional violation –insofar as the constitution does not require that inmates receive unqualified access to healthcare. *See, e.g., Gutierrez v. Peters*, 111 F.3d 1364, 1374-75 (7th Cir. 1997); *Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *Boyce v. Moore*, 314 F.3d 884, 888-89 (7th Cir.2002); *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir.1997). Further, the failure to prescribe a stronger pain medication does not constitute deliberate indifference. *See, e.g., Fitzgerald v. Greer*, 324 F. App'x 510, 515 (7th Cir. 2009); *Norfleet v. Webster*, 439 F.3d 392 (2006); *Taylor v. Couture*, No. 08 C 4871, 2010 WL 4073790 (N.D. Ill.,

10209-U0814
JLB/kmp

Oct. 12, 2010 (Exhibit D); *Robinson v. Godinez*, No. 08 C 5393, 2011 WL 386831 (N.D. Ill. Feb. 3, 2011) (Exhibit D). As such, summary judgment should be granted in favor of the defendants.

### *Qualified Immunity*

In the alternative, since Dr. Fatoki and Nurse Melvin were employed to provide medical services to inmates at the facility where Plaintiff was incarcerated, they are entitled to assert the defense of qualified immunity. *Williams v. O'Leary*, 55 F.3d 320, 324 (7th Cir. 1995) (holding that a private physician, whose employer contracted with the state to provide medical services, was entitled to assert the defense of qualified immunity in a deliberate indifference suit; affirming the district court's entry of judgment as a matter of law on qualified immunity grounds); *Sherman v. Four County Counseling Center*, 987 F.2d 397, 405-06 (7th Cir. 1993) (same).

Thus, Dr. Fatoki and Nurse Melvin will be immune from liability in this matter if this Court determines that their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Sherman*, 987 F.2d at 401.  In order to make this determination, this Court must first determine whether the alleged conduct violated Plaintiff's constitutional rights.  If his rights were violated, this Court must decide whether they were clearly established at the time the violation occurred. *Sherman*, 987 F.2d at 401, 406. Whether a constitutional right is clearly established is a question of law. The right must be sufficiently particularized to put potential defendants on notice that their conduct is probably unlawful.  Until a particular constitutional right has been stated so that reasonably competent officers would agree on its application to a given set of facts, it has not been clearly established. *Sherman*, 987 F.2d at 401, 406-07.  It is the "objective legal reasonableness" of Dr. Fatoki and Nurse Melvin's actions, assessed in light of the "clearly established" legal rules, which controls. *Wilson v. Layne*, 526 U.S. 603, 614 (1999).  *See also Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)

10209-U0814
JLB/kmp

(establishing an objective standard for qualified immunity to make summary judgment an appropriate device to "avoid excessive disruption of government and permit the resolution of many insubstantial claims"). It is Plaintiff's burden to convince the Court that a clearly established constitutional right existed. *Sherman*, 987 F.2d at 408.

Plaintiff cannot satisfy this burden since, as articulated above, there is no evidence that Dr. Fatoki and/or Nurse Melvin violated Plaintiff's clearly established constitutional rights. As a result, this Court should grant summary judgment in favor of the defendants.

WHEREFORE, Defendants, Dr. Fatoki and Nurse Melvin, respectfully requests that this Court grant summary judgment in their favor and against Plaintiff since there is no dispute as to any material fact and he is entitled to judgment as a matter of law.

        ADEYEMI FATOKI, M.D. and CARRIE MELVIN

        BY:        s/ Jana L. Brady
            HEYL, ROYSTER, VOELKER & ALLEN
                  Jana L. Brady
                  ARDC #: 6281390

HEYL, ROYSTER, VOELKER & ALLEN
Second Floor, PNC Bank Building
120 West State Street
P.O. Box 1288
Rockford, Illinois 61105 1288
Telephone    815.963.4454
Facsimile     815.963.0399

10209-U0814
JLB/kmp

PROOF OF SERVICE

I hereby certify that on August 6, 2014, I electronically filed the foregoing instrument, **MOTION FOR SUMMARY JUDGMENT**, with the Clerk of the Court using the CM/ECF system and a copy of which was sent via certified mail to the following non-CMF/ECF participant:

***Via Certified Mail***
Jeremy Noel Epperson
MCJ 50995
MERCER COUNTY JAIL
906 SW 3rd Street
Aledo, IL 61231
PRO SE

                     s/ Jana L. Brady
                     Jana L. Brady

25115578_1